UNITED STATES *v.* ZALMON PORTER

No. 7910.

Entry No. 11Y.

(Decided November 20, 1950)

*David N. Edelstein*, Assistant Attorney General (*Jerome Vale*, special attorney), for the plaintiff.

No appearance by the defendant.

FORD, Judge: The question involved in this appeal is the proper dutiable value of one fur coat exported from Canada and entered at the port of Dunseith, N. Dak., at a value of $150. The coat was appraised as entered, and thereafter the collector filed this appeal.

At the trial, counsel for the plaintiff offered the testimony of the deputy collector of customs and appraiser at the port of Pembina, N. Dak. This witness testified that "The record of our office downstairs indicates that a Mr. David Weiss forwarded this muskrat coat to this port to Mr. H. A. Wood  *  *  *  for the purpose of making entry" in November 1947; that Mr. Wood refused to make entry at $150 and returned the coat to the shipper in Canada; that a year later the same coat was entered at the port of Dunseith, N. Dak., in the month of October 1948, using the same consular invoice. When asked by the court if he knew that this was the same coat, the witness replied: "No, I couldn't say it is the same coat."

The witness further stated that he had caused an investigation to be made by the customs agency service of the United States Government, and that as a result of this investigation he had received three reports. These three reports were then offered and received in evidence as collective exhibit 1. These reports are dated December 1, 1948, and are signed by Paul H. Mitchell, customs agent.

In one of these reports, the customs agent gives a report of an interview had with a Mr. Short of the Hudson's Bay Company, Winnipeg. Among other things:

*  *  *  Mr. Short stated that the coat was a well made garment, of back skin make-up, and that such skins were heavily furred and of better than average quality; that the *retail price range* of such coats ranged from $375.00 to $485.00; *  *  *. [Italics mine.]

In another of these reports, the agent gives a report of an interview had with Mr. David Weiss, but the report of the interview with this party contains no information regarding the value of the involved coat. A report of an interview had with a Mr. Yaeger is also contained in this same report, in which Mr. Yaeger is reported as having "stated that as of October 1, 1948, the *retail value* of such coats generally described as approximately full length and from backs only at from $400.00 up; *  *  *." [Italics mine.] The agent also in this same report gives a report of an interview with a Mr. Van de Streek, proprietor of Van de Streek Furs, Minot, N. Dak., in which, among other things, Mr. Van de Streek states:

*  *  *  that it was very well made; that the skins were heavily furred and of good quality, and that were it not for the fact that the sleeves of the coat were made up in a fashion now about one year old that the coat would, in his opinion, readily sell for $485.00 in Minot at present. He further stated that while there was still considerable demand for coats with the older type sleeve, that he believed the tendency would be for furriers to discount the *retail value* of the coat somewhat for this reason, *  *  *. [Italics mine.]

The last of said reports deals only with the cost of production of said coat, a question which, as the record now stands, is not before me.

The collector of customs being the appealing party here, the burden rested upon the Government to prove that the value found by the appraiser was not the correct value of the fur coat in question.

The evidence in this case falls far short of establishing that the value found by the appraiser was not the true and correct value of the fur coat in question and also of establishing any different value therefor within any of the provisions of section 402 of the Tariff Act of 1930.

I, therefore, find the proper dutiable value of the fur coat here in question to be the presumptively correct value found by the appraiser. Judgment will be rendered accordingly.